HENRY JAYNE, EXECUTOR, ETC., .

v.

JAMES L. MURPHY ET AL.

*Administration—Gift* Causa Mortis—*Wills—Revocation.*

A gift *causa mortis* may be revoked by the donor before death. A will subsequently made amounts to a revocation.

[Opinion filed February 21, 1889.]

APPEAL from the Chancery Court of Christian County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. H. M. VANDEVEER and JOHN G. DRENNAN, for appellant.

Messrs. J. C. McBRIDE and G. L. ZINK, for appellees.

WALL, P. J. This was a bill in chancery by Julius C. Maehler, administrator of Bridget Foran, deceased, to- foreclose a mortgage.

The mortgage was executed by James L. Murphy, to secure payment of a certain bond for $700, also executed by said Murphy, dated October 3, 1884, payable to said Bridget Foran three years thereafter, bearing interest at eight per cent. per annum.

The bill made said Murphy and Henry Jayne, executor of Matthew C. Long, deceased, parties defendant. Murphy answered, admitting the indebtedness, and his willingness to pay when it should be ascertained who was entitled to the money. Jayne answered, claiming that the bond and mortgage belonged to said Long, and that he, as executor, had the right to collect the debt. He filed a cross-bill also, asking that the mortgage be foreclosed for the benefit of said estate. On a final hearing the cross-bill was dismissed, and a decree was entered according to the prayer of the original bill.

The present appeal was prosecuted by Jayne, and the on question is as to the ownership of said bond and mortgage.

It appears from the evidence that said Bridget Foran had, for several years, worked in the capacity of a domestic servant for the said Matthew C. Long, who was the keeper of a public house. She had accumulated the money in question, and it had been in the charge of Mr. Long, by whom it was loaned to said Murphy. For some time prior to the loan Miss Foran had been in poor health, and had not been able to work since about the 1st of April, 1884. She seemed to be much attached to Mr. Long and his wife, who had been very kind to her while she lived with them, in frequent instances of sickness, when she was suffering with a disease of a peculiarly distressing nature. It was proved that she said, on several occasions, that they had treated her better than her own relatives had, and that she intended to give them all she possessed. Shortly after the mortgage was made she was at Mr. Long's house, and, at her request, he showed her the bond and mortgage, and after giving it some examination she handed the papers back to him saying, in substance, that she wanted him to keep them, and if she died that he must see that she was decently buried, and what was left should be his.

We do not attempt to state in detail the testimony of the witnesses as to the language used by her. It is apparent from the examination and cross-examination that they can not give the precise words, but in substance, it was as stated. There was no assignment of the bond or the mortgage. Afterward she made her will, in which, after providing for her funeral expenses, she made various bequests, amounting to $810. The will contained the following final clause: " With the understanding that the majority of my property is in money loaned, and that the bequests herein made are to be paid as soon as the money can be realized from the persons to whom it is loaned." This will was drawn by the priest who attended her in her last illness.

It does not appear that she had any considerable sum of money aside from that loaned to Murphy, which was evidently the matter referred to in the clause above quoted. She died on or about December 1, 1884.

It is now contended that she gave i        ., represented
by this bond to Mr. Long.   We are clearl  of opinion it was
not a gift *inter vivos*.   It can hardly ad-.it of a doubt that
she did not intend to divest herse'ſ unconditionally of this
chose in action, which was all sh·· possessed, and without
which she would be a pauper, and by reason of her failing
health, unable to gain her support.

Probably she then intended, in case of her death, to give M.·.
Long what should remain after payment of burial ex· uses.

A gift *causa mortis* may be defined as a gift of personal
estate, made in prospect of death at no remote period, and
which is dependent upon death occurring substantially as
expected by the donor, and that the same be not revoked
 ⁀ ·ore death.   It must be accompanied by delivery.   2 Kent's
  ɔn. 444; Redfield on Wills, Part 2, p. 297.

† may be doubted whether there was in this case such
.·poctation of death as contemplated by the law, or whether
de-·:h occurred substantially as expected ; but whether these
conditions were present or not, there was unquestionably
a re ʋocation.

The will, made five or six weeks after the supposed gift,
indicated the clearest purpose to change the disposition of the
property.   The suggestion that the will was designed to oper-
ate upon other estates, finds no support in the proof.   She had
nothing else, and the reference in the clause above quoted,
was beyond question to this, the only such property she had.

It follows that the relief prayed in the cross-bill was prop-
erly denied, and the decree should be affirmed.

*Decree affirmed.*